DECISION AND JUDGMENT
{¶ 1} This is a delayed appeal of a judgment of the Lucas County Court of Common Pleas sentencing appellant, David Booth, to an aggregate term of 17 years in prison. For the reasons that follow, we reverse the judgment of the trial court.
 {¶ 2} On January 26, 2007, appellant was indicted on one count of engaging in a pattern of corrupt activity (Count I), a felony of the first degree, and two counts of *Page 2 
aggravated robbery with firearm specifications (Counts II and III), also felonies of the first degree.
 {¶ 3} At his arraignment, appellant entered a plea of not guilty to all of the charges in the indictment. On July 9, 2007, appellant withdrew his plea of not guilty and entered a plea of no contest to both of the aggravated robbery charges and to the firearm specification associated with the charge described in Count II.[1]
 {¶ 4} During the July 9, 2007 hearing, the trial court informed appellant of the penalties for aggravated robbery as follows:
 {¶ 5} "* * * [Y]ou are entering pleas to two counts of aggravated robbery and both carries [sic] penalties of three years in a state institution. Do you understand that?"
 {¶ 6} Appellant answered in the affirmative.
 {¶ 7} The trial court further stated:
 {¶ 8} "Now, as it relates to count two, the aggravated robbery, also has a firearms specification which also carries a mandatory three years in a state institution. Do you understand that?"
 {¶ 9} Again, appellant answered in the affirmative.
 {¶ 10} Later in the hearing, the trial court asked the state to provide the factual basis for the plea. The prosecutor responded as follows: *Page 3 
 {¶ 11} "Your honor, as to count two in the indictment, if this case had proceeded to trial the State of Ohio would have proved, beyond a reasonable doubt, that on or about the 14th day of September, 2000, this Defendant, along with others, did, in fact, rob the Jeep Country Federal Credit Union located at 3447 North Detroit. That is here in the City of Toledo, Lucas County.
 {¶ 12} "Other evidence, more specifically, would have indicated Jane Peterson, assistant manager of the credit union, arrived at work approximately 7:50 in the morning, and as she was going up to unlock the door she was approached by two men in green hooded sweatshirts, dark pants. They put a gun to her head, told her to open the door, took her back to the safes. In that area, at gunpoint, told her it was not worth her life to resist. In regards to that, they went through both vaults at that point in time and obtained $206,500. They then fled on foot as they told her to lay on the ground. The evidence would have indicated through both Defendants' and Mr. Booth's own statements, that he was, in fact, involved in that.
 {¶ 13} "As to count three, more specifically, that involved the Standard Federal Credit Union located at 3546 West Central Avenue. And the date on that was May 15th, 2001. There were three employees involved in this particular instance. Mary Salvage was the first one there, she unlocked the bank branch approximately 8:30 in the morning. Two other employees, Beth Linton and Sandy Baker, arrived shortly thereafter, were given the high [sic] sign it was safe for them to enter the bank. They were approached by two individuals wearing hooded sweatshirts. At that point Sandra Baker was actually *Page 4 
forced to the ground. These two individuals were forced to the ground, held at gunpoint while Mary Salvage was taken to the back of the bank where they entered the vault. She could — excuse me, Beth could hear them, they had walkie-talkies, checked to see if the coast was clear on the outside. So there were two people involved in that, including Mr. Wyley, already involved. They were able to obtain $112,794 at this robbery of this bank."
 {¶ 14} After the trial court's notification of the penalty and the state's presentation of the facts, appellant was provided with a plea-of-no-contest form. Defense counsel indicated that he reviewed the form with appellant in its entirety prior to "convening." The plea form stated that the maximum penalty appellant could receive is 23 years, of which three years were mandatory.
 {¶ 15} The trial court accepted appellant's plea of no contest and made a finding of guilty.
 {¶ 16} On July 30, 2007, the trial court sentenced appellant to serve seven years in prison with respect to Count II and "an additional three" on the firearm specification. As to Count III, the trial court sentenced appellant to seven years. The sentences imposed were ordered to run consecutively, for a total term of seventeen years.
 {¶ 17} On appeal, appellant raises the following assignments of error:
 {¶ 18} I. "APPELLANT'S CONVICTION SHOULD BE REVERSED BECAUSE HIS NO CONTEST PLEA WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY MADE DUE TO THE TRIAL COURT'S FAILURE TO *Page 5 
ADVISE HIM OF THE MAXIMUM PENALTY OF THE OFFENSE FOR WHICH HE ENTERED HIS PLEA."
 {¶ 19} II. "APPELLANT'S SENTENCE FOR COUNT III SHOULD BE REVERSED, AS THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING APPELLANT GUILTY BASED UPON THE EXPLANATION OF THE CIRCUMSTANCES PRESENTED BY THE STATE."
 {¶ 20} III. "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, THEREBY RENDERING HIS CONVICTIONS VOID UNDER THE SIXTH ANDFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 21} Appellant argues in his first assignment of error that his plea of no contest was not knowingly, intelligently, and voluntarily made, because the trial court neglected to inform him of the maximum sentence for aggravated robbery
 {¶ 22} We initially note that appellant failed to object to the state's comments at sentencing and, thus, waived all but plain error.State v. Caplinger (1995), 105 Ohio App.3d 567, 570-571. "Plain error does not exist unless, but for the error, the outcome of the criminal proceedings would clearly have been different." State v. Ferreira, 6th Dist. No. L-06-1282, 2007-Ohio-4902, ¶ 11. A reviewing court should notice plain error only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. State v.Barnes (2002), 94 Ohio St.3d 21, 27. *Page 6 
 {¶ 23} To determine whether appellant's guilty plea was made knowingly, intelligently, and voluntarily, we must consider whether the trial court complied with the requirements of Crim. R. 11(C). Crim. R. 11(C) relevantly provides:
 {¶ 24} "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 25} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 26} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 27} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." Crim. R. 11(C)(2).
 {¶ 28} The requirements listed in Crim. R. 11(C)(2)(c) are constitutional, and require strict compliance. State v. Eckles, supra at ¶ 7. The requirements listed in *Page 7 
Crim. R. 11(C)(2)(a) and (b) are nonconstitutional, and require only substantial compliance. Id. at ¶ 43. As stated by the Supreme Court of Ohio in State v. Nero (1990), 56 Ohio St.3d 106, "Substantial compliance means that under the totality of the circumstances the defendant substantially understands the implications of his plea and the rights he is waiving." Id. at 108. In addition, an appellant who challenges his plea on the basis that it was not knowingly and voluntarily made must show a prejudicial effect. Id., citing Nero, supra at 108. The test is whether the plea would otherwise have been made. Id.
 {¶ 29} Generally, the failure of a trial court to properly inform a defendant of the maximum penalty applicable to his offense is reversible error. Id. In the instant case, the trial court made the following statement before appellant entered his no contest plea:
 {¶ 30} "You are entering pleas to two counts of aggravated robbery and both carries penalties of three years in a state institution.
 {¶ 31} "* * *
 {¶ 32} "Now, as it relates to count two, the aggravated robbery, also has a firearms specification which also carries a mandatory three years in a state institution."
 {¶ 33} The basic prison term for the offense of aggravated robbery, a felony of the first degree, is three, four, five, six, seven, eight, nine, or ten years. See R.C. 2911.01(A)(1) (aggravated robbery); R.C. 2929.14(A)(1) (basic prison terms for a felony of the first degree). *Page 8 
 {¶ 34} Based on the trial court's statement of the penalty involved in this case, appellant may well have been under the impression that the highest penalty he could receive would be nine years in prison. Such impression would certainly have had an unfair effect on appellant's decision to enter a no-contest plea, perhaps even inducing him to enter it.
 {¶ 35} Indeed, appellant withdrew his not guilty plea and pleaded no contest to offenses that the trial court indicated to him carried a sentence of three years. The court failed to indicate that three years was the minimum sentence, and failed to indicate the maximum penalty involved. Appellant is now serving prison terms of seven years on each of the offenses in question. Under the totality of the circumstances, we conclude that the trial court failed to substantially comply with Crim. R. 11(C)(2)(a), and that such failure resulted in prejudice to appellant.
 {¶ 36} Because the deficiencies in this case rise to the level of plain error, appellant's first assignment of error is well-taken.
 {¶ 37} Our disposition of this assignment of error renders appellant's additional assignments of error moot. See App. R. 12(A)(1)(c).
 {¶ 38} On the basis of the foregoing, the judgment of the Lucas County Court of Common Pleas is reversed. Appellant's guilty plea is vacated, and this cause is remanded to the trial court for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred *Page 9 
in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR.
[1] Ultimately, a nolle prosequi was entered on the remaining charge of engaging in a pattern of corrupt activity (Count I) and on the additional firearm specification (associated with Count III). *Page 1